**STEPHEN M. LOSH, ESQ. (S.B.N. 127508)**
**JOSEPH KHOSHLESAN, ESQ. (S.B.N. 274430)**
**LOSH & KHOSHLESAN, LLP**
8889 West Olympic Blvd, Penthouse Suite
Beverly Hills, CA 90211
Telephone: (310) 299-2283
Facsimile:   (310) 299-2286

Attorneys for Plaintiff Biopharma Research, LP

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOPHARMA RESEARCH LP, a Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA and DOES 1 to 20, INCLUSIVE,<br><br>Defendants. | Case No.: 2:17-cv-04264 RSWL(AFMx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon Ronald S.W. Lew<br><br>Date:     September 18, 2018<br>Time:     10:00 a.m.<br>Dept:      TBD<br><br>*Filed concurrently with:*<br>(1) *Plaintiff's Separate Statement of Disputed and Undisputed Facts*<br>(2) *Decl. of Harold Dickens In Support*<br>(3) *Decl. of John Mehta In Support* |

# **TABLE OF CONTENT**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ……..……………... 5

I. INTRODUCTION……………………………………………………. 5

II. FACTUAL BACKGROUND…………………………………………. 6

III. SUMMARY JUDGMENT IS IMPROPER BECAUSE THERE ARE VALID TRIABLE ISSUES OF MATERIAL FACT........................ 9

    A. Triable Issues of Material Fact Exist As To Plaintiff's Breach of Contract Cause Of Action……………………………………...… 9

    B. Triable Issues of Material Fact Exist As To Plaintiff's Bad Faith Cause Of Action……………………………………………………… 15

    C. Biopharma Can Maintain a Claim for Punitive Damages………….… 18

IV. CONCLUSION………………………………………….…………….…… 19

# TABLE OF AUTHORITIES

**Page**

**CASES**

**Federal Cases**

*Adickens v. S.H. Kress & Co.*,
   398 U.S. 144 (1970)………………………………………………. 9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)………………………………………………. 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)……………………………………………... 9

*Sears, Roebuck and Co. v. Reliance Ins. Co.*,
   654 F.2d 494 (1981)……………………………………………….. 12

**State Cases**

*AIU Ins. Co. v. Superior Court*
   (1990) 51 Cal. 3d 807………………………………...…………….. 11

*Austero v. Nat'l Cas. Co.*
   (1978) 84 Cal.App.3d 1……………………………………………. 17

*Diep v. California Fair Plan Ass'n*
   15 Cal.App.4th 1205(1993)……………… ……………………….. *in passim*

*Egan v. Mutual of Omaha Ins. Co.*
   (1979) 24 Cal.3d 809……………………………………………… 16

*Gruenberg v. Aetna Ins. Co.*
   (1973) 9 Cal.3d 566……………………………………………… 5, 16

*Love v. Fire Insurance Exchange*
   (1990) 221 Cal.App.3d 1136…………………………………….. 16

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES (Cont.)
Page

*Montrose Chemical Corp. v. Admiral Ins. Co.*
    (1995) 10 Cal. 4th 645……………………………………………………… 11

*Neal v. Farmers Ins. Co.*,
    21 Cal.3d 910 (1978)……………..…… ….…………………………. 16, 18

*Palp, Inc. v. Williamsburg National Ins. Co.*
    (2011) 200 Cal.App.4th 282……………………………………………. 11

*Reserve Insurance Co. v. Pisciotta*
    (1982) 30 Cal. 3d 800…………………………………………………. 11

*Richman v. Hartley*
    (2014) 224 Cal.App.4th 1182……………………………………. 9

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*
    (2000) 78 Cal. App. 4th 847, 873……………………………………….. 11

*Waller v. Truck Ins. Exch.*
    (1995) 11 Cal.4th 1……………………………………………………… 16

*Wilson v. 21st Century Ins. Co.*
    42 Cal.4th 713 (2007)…………………………………………………….. 17, 18

**STATUTES**

Fed.R.Civ.P. Rule 56(a)……………………………………………………… 9

Cal. Civ. Code § 3294………………………………………………..……….. 18

Cal. Ins. Code § 790.03(h)(1)……………………………………………………. 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. <u>**INTRODUCTION**</u>

We all need insurance. We depend on insurance to protect our health, our homes, our livelihoods. We sleep at night because we do not take the risks that those without insurance take. We trust our insurance provider will protect us if and when we are in a time of need.

Insurance is the purchase of a promise: the promise that when a covered event occurs, our insurance company will live up to the words and obligations in the policy. That promise is the covenant of good faith and fair dealing. If the insurance company fails to live up to the promises upon which we relied we cannot return the policy and purchase coverage for a past occurrence from a different carrier. When an insurance company breaches the policy and its covenant with us, we can seek tort remedies for the breach of covenant of good faith and fair dealing. Indeed, California law agrees this is fair, because there is no replacement for the insurance company's broken promise. (See *Gruenberg v. Aetna Ins., Co.* (1973) 9 Cal.3d 566.)

In the case at bar, Defendant Travelers Casualty Insurance Company of America ("Travelers") sold Plaintiff Biopharma Research LP ("Biopharma") an insurance policy that covered losses, *inter alia*, water and/or related water damage. Biopharma, like all of us with insurance, paid premiums believing that Travelers would live up to its promise to be a responsible insurer if Biopharma incurred a covered loss. Biopharma did incur a loss and made a claim. We are here because Travelers refuses to take responsibility for its broken promise to Biopharma. While an insurance company has a duty to the insured, and should be on their side to find coverage, Travelers found coverage and paid out policy benefits, but once it realized that the loss was substantial and would require payment of a sizeable amount of insurance benefits, it unreasonably devoted its efforts to denying the Claim by narrowly construing policy terms to deny coverage to Biopharma who paid a premium for that very protection. Accordingly,

Travelers must be held accountable.

This case arises out of Travelers' bad faith claims handling practices and failure to pay Biopharma the contractually available benefits Biopharma was entitled to under its insurance policy after it sustained a covered property loss. Travelers moves this Court to endorse its behavior and reward it for breaking its covenant with Biopharma; which would mean that the covenant paid for by premium dollars would be rendered irrelevant.

Unfortunately, the positions taken by Travelers in the present motion are legally and factually unsupported. They violate the basic tenets of California statutory and case law and the Fair Claims Settlement Practices regulations. Biopharma chose to live by these laws, and by doing business in California, Travelers did as well.

This lawsuit is ultimately about remedying a wrong perpetrated by Travelers. Travelers concocts excuses, engages in deceptive claims handling practices, and makes legally and factually unsupported statements to avoid responsibility. We are here because Travelers, by its motion, refuses to be held accountable.

To support its position Travelers relies on a California Second District Court of Appeal decision which is factually and legally distinguishable from the case at bar. For this reason, as well as others set forth below, Travelers is not entitled to summary judgment or, in the alternative, partial summary judgment as to any issue in this case.

## II. FACTUAL BACKGROUND

Plaintiff Biopharma Research LP ("Biopharma") owns the commercial real property located at 800 West Carson Street, Torrance, California 90502 ("Property"). (Plaintiff's Undisputed Fact ("PUF") No. 1.)

On or about February 22, 2015, as well as prior thereto and subsequent thereto, Biopharma insured the Property with Defendant Travelers Casualty Insurance Company of America ("Travelers") under policy number 680-7D63712A ("Policy") against risk of loss, *inter alia*, water and/or related water damage. (PUF No. 2.)

On or about February 19, 2015, Biopharma hired an individual to make repairs to certain parts of the Building's roof. (PUF No. 3.) On or about February 22, 2018, as the roof repairs were still underway, Biopharma was notified of an imminent storm that required the Property's roof to be tarped so as to protect against potential damage to the Property. (PUF No. 4.) In response, Biopharma had the roof tarped as necessary. (PUF No. 5.)

Unfortunately, on or about February 22, 2018, wind driven rain penetrated the roof of the Property and the ensuing water loss caused extensive damage to the interior of the Property ("Loss"). (PUF No. 6.)

On or about March 23, 2015, Biopharma submitted a claim for the Loss to Travelers, which assigned the following claim number E2X1597 ("Claim"). (PUF No. 7.) Travelers then assigned the Claim to Travelers Claim Professional Elvin Gomez who inspected the Property on April 7, 2015 with Biopharma's Public Adjuster Harold Dickens. (PUF No. 8.)

Thereafter, Travelers extended coverage for the Claim and authorized and paid for the mitigation services and repairs at the Property. Specifically, on April 8, 2015, Travelers issued check no. 86105089 in the amount of $16,988.46 as an initial payment for the mitigation services. (PUF No. 9.) Then, on May 1, 2015, Travelers advanced funds in the amount of $100,000.00 for structural repairs via check no. 8617710. (PUF No. 10.) Overall, Travelers issued $116,988.46 to Biopharma for emergency water mitigation expenses and an advance on structural repairs which Biopharma relied on to pursue mitigation services and repairs to the Property. (PUF No. 11.)

Importantly, the Policy provides in relevant part:

**A. Coverage**:

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.

///

> **1. Covered Property**
>
> Covered Property, as used in this Coverage Form, means the type of property described in Paragraph A.1. . . .
>
> **a. Building**, meaning the building or structure described in the Declarations, including: . . .
>
> **(8)** If not covered by other insurance:
>
> **(a)** Additions under construction, alterations and **repairs to the building or structure**; and
>
> **(b) Materials, equipment, supplies and temporary structures**, on or within 1,000 feet of the described premises, **used for making additions, alterations or repairs to the building or structure**.

(PUF No. 12.)

As Travelers realized that this was a substantial loss that would require a substantial payout of policy benefits, it transferred the Claim from Mr. Gomez to General Adjuster Dawn Lucia of the Major Case Unit. (PUF No. 13.)

Unfortunately, the Claim was then improperly and wrongfully handled by Travelers in an effort to withhold further benefits and deny the Claim which was improperly closed on or about March 28, 2016. (PUF No. 14.)

Initially, Travelers hired Larry Hampton of JS held to inspect the roof of the Property. (PUF No. 15.) When Mr. Hampton was unable to provide Travelers with the opinions it sought for a denial, Travelers hired Dan Klatt of JS held to do so. (PUF No. 116.)

Because of Travelers' wrongful claims handling practices and unreasonable withholding of further benefits, Biopharma has been and continues to be damaged in excess of $750,000.00. (PUF No. 17.)

## III. SUMMARY JUDGMENT IS IMPROPER BECAUSE THERE ARE TRIABLE ISSUES OF MATERIAL FACT

Summary judgment is only appropriate where there is no genuine issue as to any material fact. (Fed.R.Civ.P. Rule 56(a); See, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).) The movant bears the initial burden of establishing the absence of a genuine issue. (*Celotex*, 477 U.S. at 323.) In determining whether a genuine issue of material fact exists, the court is to view the record in light most favorable to the party opposing the motion, in this case, the Plaintiff. (*Adickens v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).) The court is to give the non-movant the benefit of all favorable inferences that can be reasonably drawn from the record as well as the benefit of any doubt as to the existence of any genuine issue of material fact. (*Id.*) An issue is "genuine" where its resolution could establish an element of a claim or defense. (*Celotex*, 477 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).)

### A. Triable Issues of Material Fact Exist As To Plaintiff's Breach of Contract Cause Of Action.

To prevail on a cause of action for breach of contract, Biopharma must prove: (1) the contract, (2) its performance of the contract or excuse for nonperformance, (3) Travelers' breach, and (4) the resulting damage to Biopharma. (See *Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186.)

Biopharma entered into the Policy with Travelers to insure the Property. The Policy required Biopharma to pay premiums to Travelers for its insurance coverage on the Property. In consideration of the premium payment to Travelers for the Policy, Travelers agreed to provide insurance coverage on the Property as represented in the Policy, including water losses caused by wind driven rain penetrating the roof of the Property. Biopharma made timely premium payments and performed its obligations under the terms and conditions of the Policy and in the manner specified by the Policy. Travelers, however, breached the Policy terms and conditions when it failed to properly

adjust and pay Biopharma's benefits due under the Policy for a covered loss. Specifically, after initially extending coverage for the Claim and paying out over $116,000.00 in policy benefits for Biopharma to conduct mitigation services and begin repairs, Travelers subsequently, unreasonably devoted its efforts to denying the Claim, forcing Biopharma to attempt to perform on its own and at its own expense.

Travelers' failure to perform its obligations under the Policy directly damaged Biopharma by deliberately delaying the repairs to the Property, creating a liability for Biopharma to the remediation company, and wrongfully and unreasonably denying further benefits all of which created an enormous amount of financial stress on Biopharma, including lost rents from tenants.

It is important to note that Biopharma was in the process of repairing the roof of the Property when an imminent storm necessitated the placement of tarps over the roof in order to protect the Property until the storm passed. The loss occurred because winds from the storm caused rain water to enter the Property from the roof where the tarps were located.

Per the Policy, the tarps used by Biopharma fall within the definition of "Building" in the Policy for coverage. (See PUF No. 12.) The Policy clearly and explicitly states that "if not covered by other insurance . . . repairs to the building or structure; and, materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making . . . repairs to the building or structure" are covered. In Biopharma's case, there is no other insurance other than the Travelers' Policy at issue. Moreover, it is undisputed that the Property was under repair, i.e. its roof. Furthermore, it is undisputed that the tarps were "materials, equipment, supplies" used during the repairs to the Property.

That is why it should be no surprise that Travelers extended coverage for the loss and paid out over $116,000.00 to Biopharma for initial emergency mitigation services and initial structural repairs. In reliance, Biopharma moved forward with the

10
**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

water mitigation and repair efforts. Travelers then improperly and wrongfully handled the Claim in an effort to deny the Claim and withhold further benefits.

It is well-settled law in California that, "in the insurance context, we generally resolve ambiguities in favor of coverage. [Citations.] Similarly, we generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured." (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal. App. 4th 847, 873 citing *AIU Ins. Co. v. Superior Court* (1990) 51 Cal. 3d 807, 822, fn. omitted; *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal. 4th 645, 667.) In contrast, exclusionary clauses are interpreted narrowly against the insurer. [Citations.]' [Citations.]" (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., supra,* 78 Cal. App. 4th at p. 873 citing *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal. 3d 800, 808.)

"The insured has the burden of establishing the claim comes within the scope of coverage, and the insurer has the burden of establishing the claim comes within an exclusion. [Citation.] To prevail, the insurer must establish its interpretation of the policy is the only reasonable one. [Citation.] Even if the insurer's interpretation is reasonable, the court must interpret the policy in the insured's favor if any other reasonable interpretation would permit coverage for the claim. [Citation.]" (*Palp, Inc. v. Williamsburg National Ins. Co.* (2011) 200 Cal.App.4th 282, 290.)

California courts "generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal. 3d 807, 822, fn. omitted.) Thus, it would be manifestly contrary to the reasonable expectations of the parties to hold that Biopharma did not have insurance coverage for the loss at the Property caused by the wind driven rain water intrusion through the tarps that were being used during the course of the repairs to the roof. Policy benefits are due as a covered cause of loss occurred here, Travelers indisputably extended coverage and began paying out policy benefits.

The construction of the Policy Travelers is currently relying on to retroactively exclude coverage for the loss is not reasonable in light of the Policy provisions and read as a whole. Travelers' construction would nullify the very purpose of the coverage afforded Biopharma for covered causes of loss, thereby causing a forfeiture where the parties intended coverage. A court could assume that Travelers intended to insure Biopharma for a loss of this type because it did; and, in fact paid out on the claim. Any other assumption would allow Travelers to simply accept the premium and avoid any corresponding obligation. (See *Sears, Roebuck and Co. v. Reliance Ins. Co.*, *supra*, at pp. 498-499.)

In retroactively denying the Claim and withholding further benefits, Travelers is advancing an interpretation of the Policy that would render a covered loss in the Policy a nullity since the Loss is explicitly identified as a covered cause of loss under the Policy. There is no reasonable basis for interpreting the coverage in such a manner as Travelers has in that it would effectively retract the coverage extended for the Loss.

As Travelers would have it, it properly denied the Claim retroactively and carefully followed and adhered to the California Code of Insurance Regulations. In order to take this position, Travelers ignores and skips over the the express Policy language affording coverage for the Loss and the fact that it actually extended coverage and paid benefits thereby inducing Biopharma to move forward. Moreover, Travelers' interpretation of policy provisions in this case classifies as a misrepresentation to the Insureds of pertinent insurance policy provisions relating to coverages at issue in violation of Cal. Ins. Code § 790.03(h)(1). Simply, Travelers retroactively raised issues in regards to coverage by unjustifiably cherry picking the language it desired in the Policy, ignoring pertinent Policy language, and facts and circumstances, that existed in this loss, and overall inappropriately interpreting coverage narrowly.

Defendant also cites and relies on the case of *Diep v. California Fair Plan Ass'n* (1993) 15 Cal.App.4th 1205 ("*Diep*") for the proposition that its retroactive denial of

coverage of Biopharma's claim was warranted. The facts of *Diep*, however, are distinguishable from the case at bar.

In *Diep,* the plaintiff's property was undergoing repairs to its roof and every time a portion of the roof was removed, the opening would be covered with plastic sheeting. Then two separate storms occurred during the ongoing roof repairs over a period of time. When these two separate storms occurred, the plastic sheeting were already in place as part of the ongoing roof repairs; they were not put there to protect against an imminent emergency. Thus, two separate storms caused the plastic sheeting to be blown open allowing rain to enter and flood the plaintiff's property, causing extensive damage, each time. The *Diep* court explicitly ruled that the plastic sheeting, under the facts and circumstances as they existed for plaintiff therein (i.e. "**in the context of this building and this policy**," *Diep* at p. 1211), did not constitute a roof because the parties to the insurance contract would not have originally intended the result the plaintiff sought, i.e. that the tarps used were part of the "roof" under the *Diep* policy.

Firstly, the Policy in *Diep* while including the standard wind-water damage exclusion, did not cover materials, equipment, supplies, and temporary structures of all kind, incident to repairs. Secondly, as the *Diep* court pronounced, the duration of the placement of the plastic sheeting on the roof in *Diep* was prohibitive to coverage as no reasonably prudent person would have considered the plastic sheeting as adequate protection for the length of time spanning two storms. Thus, the plaintiff in *Diep* was not acting "reasonably" or using "reasonable" means to save and/or preserve the property from loss and, most importantly, the policy did not contain language explicitly covering materials, equipment, supplies, and temporary structures of all kind, incident to repairs which would have allowed the conclusion that the parties contemplated coverage for that particular loss.

In Biopharma's case, however, the Policy clearly contains the standard wind-

water damage exclusion, but also covers materials, equipment, supplies, and temporary structures of all kind, incident to repairs. (See PUF No. 12.) Thus, the Biopharma policy specifically insured against the hazards of repairs and covered all materials incident thereto. Thereby reinforcing the fact that under the circumstances of the instant matter, the word "roof" would have reasonably been construed by the parties to include temporary tarps covering the roof during repairs and the passing storm. The coverage in the Biopharma policy contemplated repairs to the Property, including its roof, which gives coverage under the Policy a broader interpretation.

Moreover, the tarping of the roof of the Property took place under emergency circumstances due to an immediate storm approaching. So, the tarps were put in place unexpectedly to protect against an imminent passing storm. Distinguishable from *Diep*, Biopharma acted reasonably and used reasonable means to save and/or preserve the Property from loss through the one imminent storm after which the tarps would be removed and work on the roof finalized. Thus, one of the controlling factors here is also the reasonable in the use and duration of the tarps' placement differs greatly from *Diep*.

Under the facts and circumstances of the instant matter, it can be held that given the express Policy language regarding materials, equipment, supplies, and temporary structures of all kind, incident to repairs, it was in the contemplation of the parties to cover the loss as it occurred here because the roof would have been reasonably construed by the parties to include the temporary tarp used during repairs to protect against the passing storm. The tarps at issue here were not left there for a month or months, or longer; rather, they were reasonably placed to temporarily protect the Property from the passing storm after.[1] Otherwise, if we took the Travelers' position to

---

[1] Biopharma had no prior knowledge of the immediate pendency of the storm and only tarped the roof when warned that a sudden and unforeseeable storm was about to occur.

its logical conclusion, Biopharma could never make repairs to its roofs and take means to protect the Property during a storm as it would be voiding the Policy.

### B. Triable Issues of Material Fact Exist As To Plaintiff's Bad Faith Cause Of Action.

First, Travelers argues the there was no coverage for Biopharma's Loss and that therefore a dismissal of the bad faith claim is warranted. As demonstrated above, there is coverage for Biopharma's loss under the Policy. The court in *Diep* did not find coverage under the facts and circumstances in *Diep* because in the specific context of the building and the policy in *Diep*, the tarps used therein did not constitute a "roof" under the terms of the *Diep* policy and, therefore, the parties to the *Diep* policy would not have contemplated coverage for the *Diep* loss. The *Diep* court's reasoning had to do with the reasonableness of the use and duration of the placement of the tarp in that case as well as the lack of any policy language that would have allowed the interpretation that the parties contemplated coverage for a loss involving materials used incident to repairs. In our case, however, Biopharma acted reasonably when it put the tarps in place during repairs to protect the Property once a storm was inevitable. Moreover, while the Biopharma Policy contains the standard wind-water damage exclusion, it also in fact contains specific policy language covering materials, equipment, supplies and temporary structures of all kinds incident to repairs. See PUF No. 12.) Thus, the Court in this case should find that under the circumstances of this matter, the word "roof" should be reasonably construed by Travelers and Biopharma to include a temporary cover on the roof incident to repairs and since the tarps constitute a "roof" per the Policy then coverage ensues because it is undisputed that the wind blew the tarps open allowing rain to enter the Property and cause damage.

Second, Travelers argues that even if it did breach contract with Biopharma, the bad faith cause of action should still be dismissed because it cannot be shown that

Travelers acted unreasonably because there was a genuine dispute between the parties over coverage since Travelers relied on its roofing expert.[2] This is simply untrue.

In every contract there exists a duty to act in good faith towards the other contracting party. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 577.) "Unreasonable withholding of policy benefits due the insured gives rise to a tort cause of action for breach of implied covenant of good faith and fair dealing". (*Id. at* 574.)

"[T]here are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." (*Love v. Fire Insurance Exchange* (1990) 221 Cal.App.3d 1136, 1151, internal citations omitted.)

Insureds seek protection against unexpected calamity and purchase insurance to buy peace of mind and security. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 819.) If the insurer unreasonably refuses or delays paying benefits that are due, it is likely to cause the very harm the insurer had agreed to prevent. (*Id.*) "The implied covenant enjoins the insurer from impairing the insured's right to receive the benefits for which he or she contracted." (*Id.* at 818-19.) The implied covenant of good faith and fair dealing "is based on . . . the long-standing rule that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (*Waller v. Truck Ins. Exch.* (1995) 11 Cal.4th 1.) The implied covenant of good faith and fair dealing requires the insurer to act fairly with respect to an insured's claim for benefits. The ultimate test of liability is whether its refusal to [pay or] promptly provide policy benefits was unreasonable. (*Neal v. Farmers Ins. Exch.* (1978)

---

[2] At the same time, in light of the facts of this case and how they are wholly distinguishable from *Diep*, it was certainly unreasonable for Travelers to deny coverage based on the terms of the Policy at issue in our case which explicitly provides coverage for materials, equipment, supplies and temporary structures of all kinds incident to repairs

21 Cal.3d 910, 925; *Austero v. Nat'l Cas. Co*. (1978) 84 Cal.App.3d 1, 32.) For the insurer to fulfill its obligation not to impair its insured's right to receive the benefits of the contract, the insurer must give at least as much consideration to its insured's interests as it does to its own. (*Egan*, 24 Cal.3d at 819.)

In this case, Travelers initially properly extended coverage and issued partial payments for mitigation services and repairs. However, as Travelers realized that this was a substantial loss that would require a substantial payout of policy benefits, it transferred the Claim from Mr. Gomez to Ms. Lucia and engaged in an effort to withhold further benefits and deny the Claim. Travelers' wrongful conduct included but was not limited to hiring Larry Hampton of JS held to inspect the roof of the Property and when Mr. Hampton was unable to provide Travelers with the opinions it sought for a denial, Travelers hired Dan Klatt of JS held to do so. Travelers conduct was deliberate and calculated, let alone unreasonable, biased, fraudulent and unjustified. Before forming an unreasonable basis.

As set forth herein, the evidence demonstrates that Travelers acted in bad faith in handling the Claim and there was no genuine dispute. Rather, Travelers concocted a dispute; there was nothing "genuine" about Travelers' purported "dispute." A devised and directed roof report does not insulate Travelers from bad faith claims handling claims. As discussed above, there exist triable issues of material fact based on the basis of Travelers's withholding and denial of Biopharma's policy benefits in light of the express Policy language affording coverage.

Moreover, the California Supreme Court addressed the Genuine Dispute Doctrine in *Wilson v. 21st Century Ins. Co.(2007)*42 Cal.4th 713. The *Wilson* Court held that the Genuine Dispute Doctrine "does not relieve any insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." (*Wilson*, 42 Cal.4th at 754.) "[A]n insurer is not entitled to judgment as a matter of law where

*viewing the facts in the light most favorable to plaintiff*, a jury could conclude that the insurer acted unreasonably."(*Id.*) (**emphasis added**)  The *Wilson* Court expressly stating that "a dispute is not legitimate unless it is founded on a basis that is reasonable under all the circumstances." (*Wilson,* 42 Cal.4th at 754 fn. 7.)

Here, it is clear—when viewing the facts in a light most favorable to Biopharma—that a jury could (and would) conclude that Travelers acted (and continues to act) unreasonably.  Thus, it cannot be said that "it is undisputed or indisputable that the basis for [Defendants'] denial of benefits was reasonable…"  (*Wilson*, 42 Cal.4th at 724.)  Accordingly, Travelers' motion must be denied.

### C.  Biopharma Can Maintain a Claim for Punitive Damages

Travelers argues that Biopharma is not entitled to punitive damages because it cannot prove by clear and convincing evidence that Travelers committed conduct tantamount to malice, oppression, or fraud.  This is untrue.

There are indisputable facts in this case that punitive damages liability would arise out of.  If an insurer's determination on coverage was simply erroneous, a plaintiff would recover for breach of contract; if an insurer's actions in denying coverage were unreasonable, it would be liable for the tort of bad faith; and finally, if an insurer's conduct is "oppressive, fraudulent or malicious," punitive damages may be appropriate. (See *Neal v. Farmers Ins. Co.*, 21 Cal.3d 910 (1978).)

Section 3294 of the *California Civil Code* defines "malice" to mean, *inter alia*, conduct "which is intended by the Defendant to cause injury to the plaintiff," or "despicable conduct which is carried on by the Defendant with a willful and conscious disregard of the rights of others."

Here, Travelers' despicable conduct began after it realized that this was a substantial loss that would require a substantial payout of policy benefits. Thereafter, it transferred the Claim from Mr. Gomez, who had originally and properly extended

coverage and partial payments on the Claim, to Ms. Lucia who then engaged in an effort to withhold further benefits and deny the Claim. Extending coverage for a covered Loss, paying partial insurance benefits over $116,000.000 which induced the insured into action, then engaging in an effort to withhold further benefits and deny the Claim by transferring the Claim to another claims representative and going through experts until one is found to opine in line with denial all constitute clear and convincing evidence that Travelers conducted itself in a despicable manner with a willful and conscious disregard for Biopharma's rights.

## IV. CONCLUSION

Based on the foregoing, Biopharma has established that triable issues of fact and law still exist in this case and, therefore, under the applicable law and disputed facts Travelers is not entitled to summary judgment.

Dated: August 28, 2018					Respectfully Submitted,
							LOSH & KHOSHLESAN, LLP


							 /x/ *Stephen M. Losh* /x/_____
							Stephen M. Losh, Esq.
							Joseph Khoshlesan, Esq.
							Attorney for Plaintiff

# PROOF OF SERVICE

*Biopharma Research, LP v. Travelers Casualty Insurance Company of America.*
Case No.: 2:17-cv-04264 RSWL(AFMx)
United States District Court, Central District of California

I am over eighteen years of age and not a party to the within action; my business address is 8889 W. Olympic Blvd., Penthouse Suite, Beverly Hills, California 90211 which is in Beverly Hills, the city where this mailing occurred.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected, and processes is deposited with the United States Postal Service that same day in the ordinary course of business.

On date indicated below, at my place of business at Beverly Hills, California, a copy of the following document(s):

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

was placed for deposit in the United States Postal Service in a sealed envelope, with postage fully prepaid, and addressed to:

Edmond Sung, Esq.
Weston & McElwain LLP
1960 East Grand River Ave., Suite 40
El Segundo, California 90241

( ) By MAIL: I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected, and processed is deposited with the United States Postal Service that same day in the ordinary course of business.
(X) By Electronic Mail: I also caused such document to be sent via electronic mail to the email address of the addressee above.
( ) PERSONAL SERVICE: I hand delivered said document(s) to the addressee(s) pursuant to Code of Civil Procedure sections 473c and 1011
(X) (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: August 28, 2018

            _____*/x/ Haleh Beroukhim /x/*__
                Declarant